1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   GARY LOMBARD,                    )    No. ED CV 05-779-PJW
                                      )
11                  Plaintiff,        )
                                      )    MEMORANDUM OPINION AND ORDER
12              v.                    )
                                      )
13   JO ANNE B. BARNHART,             )
     COMMISSIONER OF THE SOCIAL       )
14   SECURITY ADMINISTRATION,         )
                                      )
15                  Defendant.        )
     _____)
16

17       Plaintiff challenges the decision of the administrative law judge

18   ("ALJ") denying his claim for disability insurance benefits ("DIB")

19   and supplemental security income ("SSI").  He argues that the ALJ:

20        1.   Failed to consider a consulting doctor's opinion;

21        2.   Ignored a doctor's GAF score;

22        3.   Wrongly concluded that Plaintiff's mental impairment was not

23             severe; and

24        4.   Failed to address statements from Plaintiff's father.

25        For the following reasons, the Court concludes that the ALJ erred

26   and remand is required.

27
28

A.   <u>Failure To Address Dr. Gross's Opinion</u>

Plaintiff alleges that the ALJ erred when he failed to discuss the opinion of state agency physician David Gross.  In a nutshell, Dr. Gross determined that Plaintiff suffered from moderate limitations in 14 areas of functioning, all of which would have some impact on Plaintiff's ability to work.  (Administrative Record ("AR") 823-34.)

The Social Security Administration (the "Agency") counters that the ALJ did take Dr. Gross's opinion into account in an earlier decision.  It further argues that the ALJ indirectly considered Dr. Gross's views when he relied on testimony from medical expert Dr. Kania, who had considered all of the medical evidence, including Dr. Gross's.  Both of these arguments are rejected.

An ALJ is tasked with evaluating all of the relevant evidence in the record.  This includes the opinions of the medical doctors.  *See* 20 C.F.R. § 404.1527(d)("Regardless of its source, we will evaluate every medical opinion we receive."); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)(holding ALJ erred by ignoring medical evidence of claimant's impairments).  The ALJ cannot simply ignore relevant medical evidence.

The ALJ never mentioned Dr. Gross in his decision.  (AR 506-12.) The Agency argues that the ALJ did not have to evaluate Dr. Gross's opinion in this decision because he had previously considered Dr. Gross's opinion in an earlier decision.  This argument is specious. The ALJ who wrote the prior decision was a different ALJ than the one who wrote the latter decision.  Thus, the current ALJ cannot be said to have previously considered Dr. Gross's opinion.

As to the Agency's claim that the medical expert evaluated Dr. Gross's opinion and the ALJ listened to testimony from the medical

2

expert, again, that argument is not persuasive.  The Agency's theory
of vicarious evaluation is not supported by any case, rule, or
regulation.  Nowhere is there authority for the proposition that an
ALJ does not have to evaluate medical evidence but, instead, can hear
testimony from someone who has.  The ALJ is tasked with evaluating the
medical evidence and he must do so in writing in his decision.
Anything short of that invites reversal.

B.   Failure to Consider Dr. Eby's GAF Score

     Plaintiff's treating psychologist Thomas Eby assessed Plaintiff
with a GAF of 45.[1]  This is tantamount to an opinion that Plaintiff
has a disabling level of impairment.  *See Castaneda v. Apfel*, 2001 WL
210175, at *3 (D. Or. Jan. 18, 2001).  Plaintiff complains that the
ALJ did not discuss Dr. Eby's GAF score but did discuss some of the
other doctors' higher (55-60) GAF scores.

     Though a GAF score can be an important barometer of a doctor's
view of a claimant's condition, it is not in and of itself so critical
that an ALJ's failure to discuss it amounts to reversible error where,
as here, the doctor's opinion--which is consistent with the GAF score-
-is properly analyzed by the ALJ.  In addition to the GAF score, Dr.
Eby provided two letters explaining what he believed Plaintiff's
condition was, and an evaluation form which contained his views on

--------

     [1]  The Global Assessment of Functioning or GAF scale reports a
"clinician's judgment of the individual's overall level of
functioning," which is used in "planning treatment and measuring its
impact, and in predicting outcome."  *Diagnostic & Statistical Manual
of Mental Disorders*, Fourth Edition, Text Revision (2005) (hereinafter
"DSM IV-TR"), p. 32-34.  A GAF of 41-50 indicates "[s]erious symptoms
(e.g., suicidal ideation, severe obsessional rituals, frequent
shoplifting) OR any serious impairment in social, occupational, or
school functioning (e.g., no friends, unable to keep a job)."  *Id*. at
34.

3

Plaintiff's condition and his ability to work.  (AR 886-89.)
Ultimately, the views expressed in these submissions were consistent
with a GAF of 45.  The ALJ reviewed this material and evaluated it,
finding that Dr. Eby's opinions should be discounted because they
"contain no symptoms and no reference to any objective evidence."  (AR
509.)  Clearly, then, the ALJ acknowledged Dr. Eby's input and
discounted it.  His failure to specifically address the GAF score in
the context of this case was not error.

C.   The ALJ Erred At Step Two

     Dr. Gross determined that Plaintiff was moderately limited in 14
areas of mental functioning.  (AR 823-25.)  Dr. Eby concluded that
Plaintiff's limitations were even more severe.  (AR 887-88.)  The ALJ
found at step two that Plaintiff did not have a severe mental
impairment.  (AR 507.)  This finding was erroneous.  The step-two
analysis is a *de minimis* screening test intended to eliminate
groundless claims.  *Smolen*, 80 F.3d at 1290.  An impairment is severe
at step two if it has more than a minimal effect on an individual's
ability to do basic work activities.  Clearly, the record evidence in
this case establishes that Plaintiff has some mental limitations and
that they would more than minimally affect his ability to work.  The
ALJ's failure to recognize this was error and, on remand, he should
address the step-two analysis again.  If he still concludes that
Plaintiff does not have a severe mental impairment, he should explain
why.

D.   The ALJ Failed To Properly Address Plaintiff's Father's Testimony

     Plaintiff's father submitted a questionnaire that chronicled some
of Plaintiff's difficulties as a result of his various impairments.
(AR 186-91.)  The ALJ failed to discuss the father's input.  This was

4

error.  Lay witness testimony is relevant evidence and can only be disregarded for reasons that are germane to the witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)(holding ALJ must give reasons germane to lay witness testimony in order to discount it).  A total failure to even address it is error.  *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006)("[A]n ALJ must consider lay witness testimony concerning a claimant's ability to work.")  For this reason, too, the case is remanded.  On remand, the ALJ should acknowledge that Plaintiff's father provided testimony and explain why it is accepted or rejected.

E.   Conclusion

     For the reasons discussed above, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.


     DATED:    March  14  , 2007.



                                   _____
                                   PATRICK J. WALSH
                                   UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\LOMBARD, G\Memo_Opinion_Ord.wpd

5